No. A-CV-15-82

COURT OF APPEAL OF THE NAVAJO NATION

June 15, 1983

NAVAJO NATION, ex rel. DIVISION OF SOCIAL WELFARE
in the interest of TWO MINOR CHILDREN

Navajo Nation, ex rel Division of Social Welfare, In re the Interest of
T.Y. and E.Y. Minors. (Appellants) F.D. Moeller, Esq., Farmington,
New Mexico.

This is an appeal from the entry of child placement in which the
minor children seek to overturn that ruling.

It is the standard policy of the Navajo Courts to caption cases
involving minor children in such a way as to conceal their identity from
the public. This is in the interests of the children, and it is done
here.

FACTUAL SETTING

In February of 1980 Navajo Children's Legal Services brought a
children's action in the name of the Navajo Nation using an ancient
practice of acting as a relator to the court. 9 Anne. (1711)(British
statute). That action was for the purpose of terminating the parental
rights of two parents who had allegedly abandoned their children.

Following a finding that the Navajo Police could not make per-
sonal service of the petition upon the natural parents, the court ordered
service by publication, and on November 13, 1980 the court, finding
due notice to the parents in accordance with law, found that the child-
ren had been abandoned, and it terminated the parental rights of the
natural parents. The children were placed under the guardianship of
the New Mexico Department of Human Services for the purpose of an
adoption.

Subsequently the Division of Social Welfare of the Navajo Nation
intervened in the action without a motion to intervene or substitute
parties, and it recaptioned the case as the relator, using the name of
the Navajo Nation. The intervention was for the purpose of asking that
the children be placed in the joint custody of the New Mexico Depart-
ment of Human Services and the Navajo Social Welfare agency for the
further purpose of placing the children for adoption. An order granting
that motion was entered by the court on May 14, 1982.

On May 21, 1982 the children entered the picture by making a
written appearance through "guardian and custodian and counsel." A
few days later on June 3, 1982, a motion for reconsideration was filed,

and it interestingly recited that the two children had been put into an adoptive placement with two individuals, that the amended order was illegally granted without a hearing given due process to the children and the custodians, and that court should grant an adoption to the foster parents.

An appeal was also taken from the May 14th order.

On July 21, 1982, a stipulaton of the attorney for the Division of Social Welfare with that of the custodial parties was filed which named the custodial parties as petitioners for adoption, it agreed to the adoption of the children by them, and the appeal would be dismissed. An adoption decree was entered the same day.

Obviously, from the recitation of the facts, the court has a few questions.

## THE QUESTIONS THE COURT HAS BECAUSE OF A REVIEW OF THE FILES

1. The appeal file shows no motion to this court asking its leave for a dismissal of this appeal. May parties obtain a dismissal of an appeal by not filing a motion with the Court of Appeals and obtaining its leave to do so?

2. Who is the real petitioner and relator in the district court action? Is it the Division of Social Welfare or the Navajo Children's Legal Services? Who is standing as the relator?

3. The district court file shows no proof of publication of notice to the parents. Is this a valid adoption?

4. Court documents appear to show the same attorney representing the interests of the adoptive parents and the children. Who was counsel representing and what authority did he have to do so?

5. Did the proposed adoptive parents have any standing to appear before the court as parties to the action or to act on behalf of the children?

6. Is this appeal moot?

The court is very disturbed by the state of the district court file and the proceedings it reflects. What is most disturbing is that there is not evidence of proper service of process by publication upon the natural parents, and this court wants assurance that the record of the district court shows a proper, legal and valid adoption.

The court is also disturbed by the appearance of parties out of nowhere without motions to intervene, identifying their interests. The court is concerned with the standing of the adoptive parents, particularly where they asserted rights on behalf of children without any apparent authority to do so and where they suddenly ceased purportedly acting to enforce the children's rights to due process.

Normally the Chief Justice is confined to making a determination of probable cause reviewing appeals. 7 NTC Sec. 801(b). In this case the Chief Justice will not only comment upon the probable cause for this appeal, but upon these other disturbing aspects. See 7 NTC Sec. 371. This is done because of the lack of Navajo precedent and the need to instruct the court below and counsel as to what should have been done in this case.

## DISMISSAL OF APPEALS

This is a case in which there was subsequent action after the filing of the notice of appeal which has made the grounds for appeal moot. This court will not rule upon whether or not the district court had jurisdiction to act after the filing of the notice of appeal and will assume for the purposes of this case only that it did. This case comes before the Chief Justice on the record, and there is no motion to dismiss the appeal pending before the court. It is of course standard appellate procedure that the leave of the court of appeals must be obtained before an appeal can be dismissed or withdrawn. 5 Am.Jur.2d, Appeal and Error Sec. 920. The Court of Appeals may dismiss an appeal on its own motion. Id. Sec. 918. Therefore this matter is properly before the court.

## THE PROPER PETITIONER

This action was commenced in the name of the Navajo Nation by Navajo Children's Legal Services, and later the Division of Social Welfare took over without a motion to intervene or a motion to substitute parties, again using the name of the Navajo Nation.

The name of the Navajo Nation as a party plaintiff or a petitioner cannot be thrown around or used freely by anybody. 7 NTC Sec. 604 provides:

> "The Chairman of the Navajo Tribal Council or such person as he shall delegate is authorized to bring an action in the name of the Navajo Tribe, in any case where the Navajo Tribe is a Plaintiff, in the Courts of the Navajo Tribe."

In this case the action was not brought by the chairman of the Navajo Tribal Council, and there is nothing to show that either Navajo Children's Legal Services or the Division of Social Welfare was designated or authorized to use the name of the Navajo Nation to bring this action on its behalf. This may be shown by a specific authorization, an enabling statute or an approved plan of operations of a governmental agency. The court should have ascertained whether either of these agencies had the authority to bring the action in the name of the Navajo Nation, and which agency was the proper petitioner.

The two organization used "relator" practice in using the name of the Navajo Nation.

> "A relator is a party in interest who is permitted to institute a proceeding in the name of the People or the attorney general when the right to sue resides solely in that official." Brown v. Memorial National Home Foundation, 329, P.2d 118, 133 (Cal. App. 1958).

> "At common law, strictly speaking, no such person as a relator to an information is known, he being a creature of the statute of 9

> Anne. In this country, even where no similar statute prevails informations are allowed to be filed by private person desirous to try their rights, in the name of the attorney-general, and these are commonly called relators." 2 Bouv. Law Dict. 2863; Cited Id. See Also, 59 Am.Jur.2d. Parties Sec. 7.

There must be proper consent to bring an action in the name of the people or the Navajo Nation, and it should clearly appear that the petitioner or plaintiff has the authority to bring an action on behalf of the Navajo Nation. 7 NTC Sec. 603; Brown v. Memorial National Home Foundation, 329 P.2d 118, 134 (Cal. App. 1958).

The practice of bringing actions to protect dependent and neglected children in the name of the Navajo Nation is specifically approved, since the Navajo Nation is the protector of its children. See, 9 NTC Sec. 1001. It appears that who may be a petitioner in such cases is unclear. 9 NTC Sec. 1151 provides that proceedings in children's cases are commenced by a petition. However, "any person may, and any peace officer shall, give the court any information in his possession that a person is or appears to be a child, within the jurisdiction of the court." 9 NTC Sec. 1151. Thus it is unclear whether the Navajo Nation is the sole petitioner for these cases or whether any individual may petition the court. While this question will be answered at some time in the future by a decision of this court or legislative action, the better practice is for the duly-constituted child welfare authorities and the duly-acting attorneys (i.e. Navajo Nation Bar members) of the Navajo Nation to bring these actions.

Where a person who is not a party of record wishes to take part in proceedings or have some control over the case, this is done by means of an application to the court either as an intervenor or as a substituted party 59 Am.Jur.2d, Parties Secs. 129, 216, 220. Intervention without motion or application of the Division of Social Welfare should not have been permitted without a determination of whether it was a proper intervening party or a proper substituted party. The court should always consider the right of a party to bring an action.

These irregularities will not effect the final outcome of this adoption matter, but they are important nonetheless and proper procedures will be followed in the future.

PROOF OF SERVICE

There is no proof in the file of this action that notice of the action was published or served upon the natural parents of the children. 7 NTC Sec. 604 states:

> "No judgment shall be given on any suit unless the defendant has actually recieved notice of such suit and ample opportunity to appear in court in his defense. Evidence of the receipt of notice shall be kept as part of the record in the case." (Emphasis supplied.)

The file has a great deal of discussion about publishing notice in the termination action due to an inability to make personal service upon the parents, but there is no proof of service as required by the statute. The order for termination of parental rights recites proper notice, and since the record of a judgment is presumed to speak the truth, that recital is deemed to be true. 46 Am.Jur.2d, Judgments Sec. 40. However, where the judgment only says that there was proper notice for jurisdiction, that is not enough, and the judgment can be attacked for a lack of jurisdiction. Id. Sec. 41. In other words, due to a lack of proof in the file showing proper publication of notice in the termination action, we have a voidable adoption. See 9 NTC Sec. 1252, 1256.

Therefore the district court is instructed to immediately require proof that there was publication of proper notice in this case and to obtain proof of that publication. If not, the court shall, on its own motion, reopen the adoption and enter the decree in the proper fashion.

We have statutes to terminate parental rights to children who have been neglected or who are dependent to protect those children. We have statutes for the adoption of children for the protection of the rights of the children and the adoptive parents. These are important rights, and the placement of a child for adoption or permanent custody should be final. It should not be possible to overturn an adoption or a permanent custody order because of the failure to accord due process to someone entitled to notice. Therefore it is shamful, irresponsible and highly unprofessional for any adoption decree or custody judgment to be entered without making certain that each and every due process or statutory requirement is completely fulfilled. A decree or judgment of a Navajo Court must carry not only the presumption of truth but the guarantee of validity.

## CONFLICT OF INTEREST

In this case the peope who wanted to adopt the children brought a motion to reconsider on behalf of the children and then turned around later and petitioned the court for adoption. The same attorney "represented" the children and the proposed adoptive parents. There was no motion to interevene or for a guardian ad litem application on either the behalf of the children or the proposed adoptive parents.

This procedure not only breaches the principle that permission to intervene in a case is required, but the principle that counsel must at all times avoid conflicts of interest. Disciplinary Rule 5-105(A) of the Code of Professional Responsibility of the Navajo Nation Bar Association prohibits lawyers from representing differing interests. It is not necessarily in the interests of a child to have a foster parent or proposed adoptive parent assert his interests in litigation, and it is not proper practice for an attorney to enter a case to represent the rights of children and then turn around and represent the rights of individuals who claim an interest in the children. This is a conflict of interest and it should not be allowed without a specific finding by a court that there is in fact no conflict of interest. In this case it will be assumed that the district judge recognized the situation and found that there was no conflict of interest, but in children's cases the representation of both a child and a custodial party by an attorney is specifically disapproved.

## STANDING OF PROPOSED ADOPTIVE PARENTS

The proposed adoptive parents were probably aware that foster parents are not constitutionally entitled to notice and an opportunity to be heard before the removal of children placed with them. Smith v. Organization of Foster Families, 431 U.S. 816 (1977). In a situation such as this, the question is whether people in such a situation have standing, i.e. the right to assert rights before the courts. The rights of children are normally represented by parents or guardians, and those rights are asserted by the appointment of someone to represent the children's interests, perferably including independent counsel to act on their behalf. Id. at 841 f.44.

Whenever there is to be a change in the custodial arrangements of a child before the courts, due process requires that there be a hearing. The child's rights to due process also require that his or her interests be adequately protected. While the adoptive parents here did not have standing of themselves to attack the custody order, the children did. Therefore their interests should have been represented through either a proper application to act as their independent guardians or the appointment of counsel on their behalf.

The situation in this case is definitely not sanctioned as a proper procedure for protecting the interests of children.

## DISPOSITION

This case is apparently moot, and there is no probable cause for the appeal to proceed to a hearing before the full appellate panel. However the procedural history of this case is an example of what should be avoided in parental termination cases and adoptions, and this case is remanded to the district court for proceedings to make certain that the adoption is final and will remain final. The children are the only important parties in this case, and their interests should be properly guaranteed by a final adoption decree which has the guarantee of finality and propriety.

SO ORDERED.